# In the United States Court of Federal Claims

No. 07-495C
Filed: September 30, 2009
**TO BE PUBLISHED**

```
*************************************
                                    *
HAM INVESTMENTS, LLC,               *
                                    *
            Plaintiff,              *       Anti-Assignment Acts, 31 U.S.C. § 3727,
                                    *          41 U.S.C. § 15;
                                    *       Federal Acquisition Regulation,
v.                                  *          FAR 52.232-23;
                                    *       Standing;
THE UNITED STATES,                  *       Summary Judgment;
                                    *       RCFC 56(c);
            Defendant.              *       RCFC 83.1(c)(4).
                                    *
*************************************
```

**Russell O. Brabham**, Shreveport, Louisiana, Counsel for Plaintiff.

**Jane C. Dempsey**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN, *Judge*.**

## I.   RELEVANT FACTUAL BACKGROUND.[1]

On September 23, 1999, the United States Army ("Army") awarded Contract Number DAKF23-99-C-0347 to Fire Security Systems ("FSS") for $1.26 million ("the September 23, 1999 Contract"). Gov't Ex. 1. Part of the proposed work required FSS to upgrade the sprinkler system in the 700 Block of the Army's Fort Campbell base ("Fort Campbell Job"). *Id.* On July 28, 2003, after a substantial portion of the Fort Campbell Job was completed, the Army notified FSS that it would be withholding $50,000 in payment "for unacceptable backflow valves." Gov't Ex. 8 at 24.

---

[1] The facts cited herein were derived from: the August 9, 2007 Complaint ("Am. Compl."); Plaintiff's Exhibits ("Pl. Ex. A-F"); the Defendant ("the Government")'s May 1, 2009 Proposed Findings Of Uncontroverted Fact ("Gov't PFF"); the Government's Exhibits ("Gov't Ex. 1-40"); Plaintiff's Response To The Proposed Findings Of Uncontroverted Fact ("Pl. Resp. PFF"); and Plaintiff's Exhibits to that Response ("Pl. Ex. 1-5").

HAM Investments, LLC is a limited liability company registered with the Secretary of State in Louisiana ("HAM"). Compl. ¶ 2. On June 28, 2002, Mr. Harold Hollenshead acquired a 100% interest in HAM and all of HAM's existing obligations, including a loan to FSS, guaranteed by Mr. William Ray Hayes, HAM's prior owner. Gov't Ex. 3. On July 3, 2003, Mr. Hollenshead sold HAM to Team Spirit Venture Equities, LLC ("Team Spirit Venture"), a company related to Team Spirit Petroleum, also owned by Mr. Hollenshead. Gov't Ex. 4, 32 at 99-105.

From June 11, 2003 to September 5, 2003, Mr. Hollenshead wrote $70,000 in checks from accounts in BancorpSouth Bank payable to Mr. Hayes, President of FSS, for the Fort Campbell Job. Gov't Ex. 5 at 16-20. Four of the five checks were drawn from Team Spirit Petroleum's account and one check, for $5,000, was drawn from HAM's account. *Id.*

On September 5, 2003, HAM and FSS entered into an assignment acknowledging HAM's "right, title and interest in and to the specific amount receivable of Assignor [FSS] described in Exhibit 'A.'" Gov't Ex. 9, 15 at 46. "Exhibit A" was an attachment to the September 5, 2003 assignment that read:

EXHIBIT "A"

"RECIEVABLE"

That certain sum of money amounting to $50,000 due to Fire Security Systems, Inc. and currently being retained by the Department of the Army, United States Army Contracting Agency, Southern Region, Fort Campbell Directorate of Contracting ("Owner") on the following described project:

Contract DAKF 23-99-C-0347
Fire Protection Upgrades
Upgrade Sprinkler System in 700 Block
Fort Campbell, Kentucky

due to Owner's rejection of backflow valves installed on the Project.

*Id.* at 48.

Although amounts due from the Fort Campbell Job did not account for the entire $70,000 loaned to Mr. Hayes, Mr. Hollenshead had long-term plans to recoup his investment in HAM and FSS by "getting Fire Securities up on its feet and going." Gov't Ex. 32 at 105.

On September 19, 2003, the Army issued a payment voucher to FSS for work on the Fort Campbell Job, indicating that the amount paid represented a ninety-nine percent "Liquidation Rate" in the amount of $237,472.29. Gov't Ex. 27 at 81. Deducting previous payments of $177,877, the "[a]mount due to Contractor" was $59,595.29. *Id.*

2

On September 25, 2003, Mr. Hollenshead wrote the Contracting Officer for the Fort Campbell Job ("CO") to inform him that the remaining payments due had been assigned to HAM and pledged to BancorpSouth Bank to "meet the requirement that the contract to be assigned to and collected by a financial institution." Gov't Ex. 10 at 26.  On September 30, 2003, Mr. Hollenshead also sent a Notice to the Army of the September 5, 2003 assignment, receipt of which was acknowledged by a notary public.  Gov't Ex.15 at 43, 45.

On October 7, 2003, Mr. Hollenshead again advised the CO's representative by letter of the September 5, 2003 assignment.  Gov't Ex. 13 at 34.  Mr. Hollenshead requested a receipt and any "guidance and information necessary to finalize the assignment" of monies due to HAM.  *Id.* at 35. The CO responded by an October 28, 2003 letter, explaining that the Army could not honor the assignment, because he was unable to confirm that HAM is a "financing institution."  Gov't Ex. 17 at 56.  The CO further explained that "investments [sic] companies are not listed as financing institutions," and neither the Caddo Parish Business Occupational Licensing Section nor the Caddo Parish Chamber of Commerce listed HAM as a financing institution.  *Id.*

On October 10, 2003, Exhibit A to the September 5, 2003 assignment was filed with the Secretary of State of Louisiana. Gov't Ex.16. The Secretary of State issued a "Confirmation of Filing," acknowledging receipt, but stated that "this confirmation does not constitute a determination of the legal sufficiency of the filing."  *Id.*[2]

On March 23, 2004, the Army issued a second payment voucher to FSS representing a 100% liquidation rate of $239,871 for the Fort Campbell Job.  Gov't Ex. 28 at 84.  Since, previous payments of $237,472.29 had been made, the final balance due to FSS was $2,398.71.  *Id.*

On April 15, 2004, Mr. Hollenshead wrote the CO to request documentation of the September 19, 2003 and March 23, 2004 payments and accused the Army of violating the Anti-Assignment Acts, 31 U.S.C. §§ 3737, 41 U.S.C. § 15 ("Anti-Assignment Acts"), when it honored FSS's invoice for payment without a release from the September 5, 2003 assignment.  Gov't Ex. 22 at 66.  This letter was considered to be a Freedom Of Information Act ("FOIA") request.  Gov't Ex. 23 at 68.

In a September 13, 2004 follow-up letter, Mr. Hollenshead complained that the Army's response to the FOIA request did not proffer the "[c]opy of release" requested and concluded that "[t]he omission of that information and the lack of an explanation, leads us to believe that there was no consultation of any kind and the Contracting Officer elected to ignore the 'Assignment of Claim[.]'"  *Id.*  Mr. Hollenshead demanded that the Army comply with the September 5, 2003 assignment.  *Id.*  On March 2, 2005, Mr. Hollenshead wrote an additional letter to the Army once again demanding payment according to the assignment.  Gov't Ex. 24 at 72.

---

[2] The date that the Secretary of State of Louisiana issued this "Confirmation of Filing" is not available in the record.

## II.   PROCEDURAL HISTORY.

On July 3, 2007, this case was transferred from the United States Court of Appeals for the Federal Circuit, where it had been "inadvertently filed," to the United States Court of Federal Claims and then assigned to the undersigned judge.  On August 9, 2007, Mr. Hollenshead d/b/a HAM Investments, L.L.C. filed a *pro se* Amended Complaint, alleging that the Government violated a lawful assignment when it failed to pay Plaintiff the remaining proceeds from the Fort Campbell Job. Am. Compl. at 9 (Prayer).

After Plaintiff obtained counsel and discovery concluded on May 1, 2009, the Government filed a Motion For Summary Judgment ("Gov't Mot. S.J."), together with Proposed Findings Of Uncontroverted Fact and Government Exhibits 1-40.  On May 31, 2009, Plaintiff filed a Response ("Pl. Resp."), together with a Response To The Government's Proposed Findings Of Uncontroverted Fact, and proffered five exhibits.  On June 12, 2009, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  28 U.S.C. § 1491.  This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff. *FW/PBS, Inc*. v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The August 9, 2007 Amended Complaint alleges that the Government failed to comply with the requirements of 31 U.S.C. § 3727 and 41 U.S.C. § 15 (collectively "the Anti-Assignment Acts") and FAR 52.232-23, by failing to pay Plaintiff the remaining amounts due for the Fort Campbell Job. Am. Compl. ¶ 12.  Specifically, the Government "has an obligation to pay [Plaintiff] an amount equal to the outstanding balance under [the September 5, 2003 Assignment], not to exceed $70,000 as of October 1, 2003, plus interest and all additional reasonable expenses incurred to collect the amounts due." Am. Compl. at 9 (Prayer).  Accordingly, the August 9, 2007 Amended Complaint

has "identif[ied] a separate source of substantive law that creates the right to money damages," so that the court has jurisdiction to adjudicate the claims alleged therein. *Fisher*, 402 F.3d at 1172.

## B.     Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). The party invoking federal jurisdiction "bears the burden to establish standing for each type of relief sought." *Summers* v. *Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009). The United States Court of Appeals for the Federal Circuit has held that an assignee to the proceeds of a government contract may sue to recover payments for work performed under the contract. *Insurance Co. of the West* v. *United States*, 243 F.3d 1367, 1374 -1375 (Fed. Cir. 2001) ("[W]e conclude that a[n assignee], after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States."). Assignees may not, however, "recover against the government on a breach of contract claim when there is no privity of contract between the assignee and the government." *Nelson Const. Co.* v. *United States*, 79 Fed. Cl. 81, 87 (2007). A valid assignment without more "does not create privity of contract between the assignee and the United States." *Thomas Funding Corp.* v. *United States*, 15 Cl. Ct. 495, 499-500 (1988). When no privity exists between the assignee and the Government, the assignee "may only bring suit for wrongful payment to a third party." *Id.* at 502.

In this case, the August 9, 2007 Amended Complaint alleges that the Government made a wrongful payment to FSS, in violation of the Anti-Assignment Acts. Am. Compl. ¶ 12. Plaintiff argues standing is satisfied, because the statutory and regulatory requirements of the Anti-Assignment Acts have been met. Pl. Reply at 2. In the alternative, Plaintiff contends that the Government waived the requirements of the Anti-Assignment Acts, accepted the assignment to HAM, and wrongfully paid FSS to the detriment of HAM. *Id.* Plaintiff's standing, however, is dependant on whether Plaintiff perfected an assignment under the Anti-Assignment Acts or, in the alternative, whether the Government waived the statutory requirements of these Acts.

## C.     Standard For Decision On A Motion For Summary Judgment.

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *Moden* v. *United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment[.]" *Id.* Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable factfinder to return a verdict for that party. *Id.* at 248-50 (citations omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co., Inc.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *Novartis Corp.* v. *Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

A trial court is required to resolve all doubt over factual issues in favor of the nonmoving party. *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1987). All reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *see also Moden*, 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

## IV.     THE GOVERNMENT'S MAY 1, 2009 MOTION FOR SUMMARY JUDGMENT.

### A.     The Parties' Arguments.

#### 1.     The Government's Argument.

The Government argues that Plaintiff is not in privity with the United States and therefore cannot seek adjudication of a claim, either under a breach of contract or a implied-in-fact contract theory. Gov't Mot. S.J. at 6. In the alternative, the September 5, 2003 assignment is defective under the Anti-Assignment Acts for three reasons: Plaintiff is not a bank, trust company, or other financing institution; Plaintiff did not cover all amounts payable under the September 23, 1999 contract; and Plaintiff failed to notify the disbursing official of the alleged assignment in the manner required by the Anti-Assignments Acts. *Id.* at 9, 12, 13.

As to the first basis for summary judgment, the Government argues that Plaintiff is not a bank, trust company, or other financing institution, as required by the Anti-Assignment Acts.[3] Gov't

---

[3] Section 15(b) thereof provides: "The provisions [invalidating assignments of government contracts] shall not apply in any case in which the moneys due . . . are assigned to a bank, trust company, or other financing institution[.]" 41 U.S.C. § 15(b). Likewise, Section 3727(c) provides: "Subsection (b) [limiting assignments of government contracts] does not apply to an assignment to a financing institution[.]" 31 U.S.C. § 3727(c).

Mot. S.J. at 9-12.  Although neither of the Anti-Assignment Acts defines a "financing institution," the United States Court of Appeals for the Federal Circuit has held that this term is defined as one that "supplies financing . . . it lends money or provides capital."  *Fireman's Fund* v. *England*, 313 F.3d 1344, 1350 at n.4 (Fed. Cir. 2002).  Plaintiff has not established that it is "(1) a qualified financ[ing] institution; [and] (2) loaned money or at least made money available for the performance of the [underlying] contract."  *Am. Nat'l Bank & Trust Co.* v. *United States*, 23 Cl. Ct. 542, 546 n.4 (1991) (alterations in the original) (internal quotation marks omitted).

In support, the Government notes that the Army contacted the Caddo Parish Chamber of Commerce and the Caddo Parish Business Occupational Licensing Section, neither of which had any licensing information about Plaintiff.  Gov't Mot. S.J. at 10 (citing Gov't Ex. 17 at 56).  The Army advised Plaintiff of these efforts in September and October of 2003.  *Id*.  Plaintiff, however, never provided any evidence that it was a qualifying financial institution, other than to reiterate that it had pledged certain assigned funds to the BancorpSouth Bank.  *Id*.  Instead, all available evidence indicates that Plaintiff is in the debt collection business, not financing.  Gov't Mot. S.J. at 11.  After Plaintiff purchased FSS's debt to the Deposit Guaranty National Bank on August 24, 1998, Plaintiff's business had no employees and was dormant.  *Id*.  Nor is there evidence that Plaintiff did or would provide any financing for the Fort Campbell Job.  *Id*. at 12.  Any financing provided to FSS from Mr. Hollenshead was funneled through Team Spirit Petroleum, characterized by Mr. Hollenshead as the "master" of the various sub-units of corporations through which he does business.  *Id*. at 12 (citing Gov't Ex. 32 at 100).

Second, the September 5, 2003 assignment is defective, because it did not cover all amounts payable under the September 23, 1999 Contract, as required by the Anti-Assignment Acts.  Gov't Mot. S.J. at 12-13.  At the time of the September 5, 2003 assignment, the Army owed $61,993.91 to FSS for the completion of the project.  *Id*. at 13.  The assignment, however, was for a sum certain of only $50,000.  Gov't PFF ¶ 4.  Since the September 5, 2003 assignment was for only a portion of the remaining amount due under the September 23, 1999 Contract, the assignment was not valid under the Anti-Assignment Acts.  Gov't Mot. S. J. at 13.

Third, the September 5, 2003 assignment is invalid, because Plaintiff did not comply with the notice provision of the Anti-Assignment Acts, by providing a copy of the assignment and any claims thereunder to the Army's disbursing office in Rome, New York.  *Id*. at 13-14.  Failure to do so invalidated the assignment.  *Id*.

Finally, although the Government may elect to waive the requirements of the Anti-Assignment Acts and accept an assignment notwithstanding any defects, in this case, the CO did not provide the "clear assent" necessary to evidence waiver.  *Id*. at 14-15.  Consequently, the September 5, 2003 assignment is "null and void" and the Government is under no duty to make payments to Plaintiff.  *Id*. at 9.

2.        **Plaintiff's Response.**

Plaintiff responds that it is a financing institution for the purposes of the Anti-Assignment Acts, because it "deals in money" and is in the business of "supplying financing." Pl. Resp. at 5 (quoting 43 Comp. Gen. 138, 139 (1963) ("A financing institution, within the purview of the assignment of claims act, is one which deals in money as distinguished from other commodities as the primary function of its business activity.")); *see also Fireman's Fund*, 313 F.3d at 1350 ("A 'financing institution' supplies financing."). As a duly registered company with the Louisiana Secretary of State, Plaintiff provided "monetary consideration" to save FSS from default with the Deposit Guaranty National Bank and guaranteed "numerous performance bonds" for FSS contracts. Pl. Resp. at 5. For example, on June 28, 2002, Mr. Hollenshead, acting as Plaintiff's "sole member," provided over $380,000 "to the benefit of FSS," taking a 100% ownership interest and, "relieving FSS of its then litigation status with the prior members of [Plaintiff]." *Id.* at 5-6. In addition, between June 11 and September 5, 2003, Plaintiff advanced $70,000 to FSS to complete the Fort Campbell Job. *Id.* at 6. Therefore, Plaintiff insists it is a financing institution or, at a minimum, Plaintiff's status is a genuine issue of material fact, precluding summary judgment. *Id.*

Next, Plaintiff argues that the September 5, 2003 assignment concerned all amounts payable under the September 23, 1999 Contract at the time the assignment was executed. *Id.* In support, Plaintiff relies on the CO's telephone conversations with Mr. Hollenshead and the CO's July 28, 2003 letter as evidence that, as of September 5, 2003, the Army owed only $50,000 on the September 23, 1999 Contract. *Id.* Since the September 5, 2003 assignment was for exactly $50,000, the assignment covered "all amounts payable" under the September 23, 1999 Contract. *Id.*

Plaintiff concedes, however, that it did not provide a copy of the notice of assignment to the disbursing office, but explains that the Army's "expedited payment" to FSS afforded "no effective opportunity" to provide the required notice. *Id.* at 7. Typically, the Army will make payment around the twelfth or fourteenth day after the CO approves an invoice for payment to a contractor. *Id.* (citing Pl. Ex. 1 at 27). In this case, and "for reasons unexplained, the FSS invoice was paid within [one] day," leaving Plaintiff insufficient time to comply with the notification requirements. *Id.*

In the alternative, Plaintiff argues that, even if the September 5, 2003 assignment was defective under the Anti-Assignment Acts, the Government waived those requirements, because of contacts with Mr. Hollenshead at the time the assignment was executed. *Id.* at 7-8. Specifically, the CO and Ms. Elmore (a contract administrator for the Director of Contracting at Fort Campbell) acknowledged receipt and notice of the assignment. *Id.* at 8. In addition, the CO "assented to the assignment and provided guidance to HAM." *Id.* Therefore, the Government waived the requirements of the Anti-Assignment Acts "through words and deeds." *Id.* Moreover, the "record in [this] proceeding[] is replete with genuine issues of material fact which reflect upon the Government's waiver," so that summary judgment is inappropriate. *Id.* at 8-12.

### 3.     The Government's Reply.

The Government replies that Plaintiff misconstrues the legal definition of "financing institution" and the nature of Plaintiff's relationship with FSS.  Gov't. Reply at 2-3.  Providing "financial consideration" and "financial benefit" in the course of a business transaction is not, as a matter of law, conducting "financing" as a business.  *Id.* at 3.  Although Plaintiff asserts that the purpose of the financial consideration was to relieve FSS of default status with the Deposit Guaranty National Bank, Plaintiff has proffered no supporting evidence.  *Id.*  In fact, at the time the contribution was made to FSS, Mr. Hollenshead did not even own Plaintiff.  *Id.*  Therefore, Plaintiff's prospective business plans are "not probative [of] HAM's status as a financing institution in this case."  *Id.*

HAM's role as guarantor on performance bonds for FSS is that of an insurer, not a financing institution.  *Id.* at 3-4.  For example, Mr. Hollenshead agreed to indemnify Mr. Gerald Hawkins and Mr. David Montgomery, Plaintiff's prior owners, from "any and all obligations" arising from bonds issued to FSS.  *Id.* at 4.  These indemnification agreements, however, do not qualify as providing financing, since "insurance companies or sureties are not financing institutions."  *Id.* at 3-4.

Likewise, Plaintiff's argument that it is a financing institution, because it provided "monetary considerations" in excess of $380,000 and advanced "$70,000 to FSS" for completion of the September 23, 1999 Contract, is insufficient, because: no evidence, including the documents Plaintiff cites, demonstrates that those transactions ever took place and any such transactions only were between FSS and Team Spirit Petroleum, not Plaintiff.  *Id.*  Plaintiff's bank account records show no activity from April 30, 2003, the date the account was opened, to the commencement of this litigation, other than: an initial deposit of $16,421.95 on May 31, 2003; a $5,341.95 transfer from Team Spirit Petroleum on September 5, 2003; and a $5,000 cashier's check issued to Mr. Hayes on that same day. Gov't Reply at 4 (citing Gov't Ex. 26 at 76-79).  The account records, however, do not reflect payment of the $380,000 in "monetary considerations."  Nor does the $70,000 advance to FSS on which Plaintiff relies as evidence of being a financing institution.  *Id.*  In fact, Mr. Hollenshead's deposition suggests that funds loaned FSS typically would have come from Team Spirit Petroleum, not Plaintiff.  *Id.*; *see also* Gov't Ex. 32 at 100.

In addition, the September 5, 2003 $50,000 assignment did not cover all the amounts payable on the September 23, 1999 Contract, as required by the Anti-Assignment Acts.  Gov't Reply at 5.  First, the CO's "vague and cursory" phone logs and annotations on September 11, 2003 did not show that only $50,000 was due on the September 23, 1999 Contract.  *Id.*  The CO's July 28, 2003 letter actually shows that the remaining balance on the Fort Campbell Job was a $50,000 retention for unacceptable backflow valves *plus* five percent of the original contract price due at completion.  *Id.* at 5-6; *see also* Gov't Ex. 8 at 24.  Subsequent payment records further confirm that the actual amount remaining on the contract was $61,993.91, not $50,000, so that the September 5, 2003 assignment did not cover "all the amounts payable" on the Fort Campbell Job.  Gov't Reply at 6.

The September 5, 2003 assignment also was defective, because HAM did not provide a copy of the notice of assignment to the disbursing officer, a defect that HAM acknowledges.  *Id.* (citing

Pl. Resp. at 7).  Failure to adhere to the notice requirements is an additional reason why the September 5, 2003 assignment is not valid.  *Id.* at 6-7.

Finally, the Army's "mere knowledge of the assignment" and "guidance to [Plaintiff] to perfect the assignment" does not amount to a waiver of the requirements of the Anti-Assignment Acts.  *Id.* at 7.  The Army's continued insistence that Plaintiff establish its bona fides as a financing institution confirms that no waiver occurred.  *Id.* at 8.  Moreover, the Army repeatedly notified Plaintiff of the failure to submit any evidence that it was a financing institution – notifications that received no response, other than Plaintiff's repeated contention that the assignments were "pledged to BancorpSouth [Bank]."  *Id.*  Furthermore, Plaintiff's contact at BancorpSouth Bank stated in an "affidavit" that the bank "did not participate in any further documentation or assignment of the requested transaction."  *Id.* (citing Pl. Ex. 3).  Since the Army's actions failed to evidence a "clear assent" to the September 5, 2003 assignment, the Army did not waive any requirements of the Anti-Assignment Acts.  *Id.* at 9.

### B.    The Court's Resolution.

The Anti-Assignment Acts limit assignments of government contracts to third parties.  31 U.S.C. § 3727(b);[4] *see also* 41 U.S.C. § 15(a);[5] *Fireman's Fund Ins. Co.*, 313 F.3d at 1349 ("These two provisions together broadly prohibit . . . transfers of contracts involving the United States or interests therein, and assignment of claims against the United States.").  Statutory exceptions,

---

[4] Section 3727(b) of Title 31 of the United States Code provides:

An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.  The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses.  The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment.  The certificate shall state that the official completely explained the assignment when it was acknowledged.  An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727(b).

[5] Section 15(a) of Title 41 of the United States Code provides:

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned.  All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

41 U.S.C. § 15(a).

10

however, may allow assignments, but only if certain requirements are fulfilled.   31 U.S.C. §
3727(c);[6] *see also* 41 U.S.C. § 15(b).[7]

———————————————

[6] Section 3727 (c) of Title 31 of the United States code provides:

Subsection (b) of this section does not apply to an assignment *to a financing institution* of money due or to become due under a contract providing for payments totaling at least $1,000 when–

(1) the contract does not forbid an assignment;

(2) unless the contract expressly provides otherwise, the assignment–

(A) *is for the entire amount not already paid*;

(B) is made to only one party, except that it may be made to a party as agent or trustee for more than one party participating in the financing; and

(C) may not be reassigned; and

(3) the assignee files a written notice of the assignment and a copy of the assignment with the contracting official or the head of the agency, the surety on a bond on the contract, and *any disbursing official for the contract*.

31 U.S.C. § 3727(c) (emphasis added).

[7] Section 15(b) of Title 41 of the United States Code also provides:

The provisions of subsection (a) of this section shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, *are assigned to a bank, trust company, or other financing institution*, including any Federal lending agency, provided:

(1) That, in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment.

(2) That, unless otherwise expressly permitted by such contract, any such assignment *shall cover all amounts payable under such contract and not already paid*, shall not be made to more than one party, and shall not be subject to further assignment, except that any such

11

1.      **A Genuine Issue Of Material Fact Exists As To Whether Plaintiff Is A
"Financing Institution" And Subject To The Anti-Assignment Acts.**

To qualify for an exception from the Anti-Assignment Acts, an assignment of a Government contract must be made to a bank, trust company, or other "financing institution." 31 U.S.C. § 3727(c); *see also* 41 U.S.C. § 15(b). Otherwise, the assignment is invalid. *Diamond Mfg. Co.* v. *United States*, 3 Cl. Ct. 424, 427 (1983) ("Where an assignee does not fit into one of these categories, the assignment is invalid as to the United States."). Neither of these statutes, however, defines the term "financing institution." 31 U.S.C. § 3727; *see also* 41 U.S.C. § 15. The United States Court of Appeals for the Federal Circuit, however, has determined that:

> [The term "financing institution"] is not ambiguous. *A "financing institution" supplies financing. That is its business. It lends money or provides capital.* As the provision in 41 U.S.C. § 15(b) indicates, the term includes banks and trust companies, as well as 'other' institutions whose business is providing financing.

*Fireman's Fund*, 313 F.3d at 1350 (emphasis added).

In *Fireman's Fund*, our appellate court explained that the term "financing institution" should not be given an "expansive reading." *Id.* (holding that ascribing any broader definition "is for Congress, not this court."). Plaintiff has the burden to establish that it is a *bona fide* financial institution. *Am. Nat'l Bank & Trust Co. of Chi.* v. *United States*, 23 Cl. Ct. 542, 545 n.4 (1991) (requiring a plaintiff to "show that it: (1) is a qualified financial institution; (2) loaned money or at least made money available for the performance of the . . . contract").

In this case, Plaintiff asserts that it provided $1.2 million in "monetary considerations" to FSS, *i.e.*, $750,000 to cure FSS' default status with the Deposit Guaranty National Bank, and in

---

> assignment may be made to one party as agent or trustee for two or more parties participating in such financing.
>
> (3) That, in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of the assignment with–
>
> (A) the contracting officer or the head of his department or agency;
>
> (B) the surety or sureties upon the bond or bonds, if any, in connection with such contract, and
>
> (C) *the dispersing officer*, if any, designated in such contract to make payment.

41 U.S.C. § 15(b) (emphasis added).

"financially guaranteeing numerous performance bonds of FSS contracts." Pl. Resp. at 5-6. Specifically, the August 24, 1998 debt purchase agreement evidences that $750,000 in cash was paid in consideration of "all of the Debt owed [Deposit Guaranty National Bank] by FSS, together with all of [the] Bank's rights to the Collateral and under the Loan documents[.]" Gov't Ex. 37 at 149. This agreement, however, did not "lend money or provide capital" to FSS. *Fireman's Fund*, 313 F.3d at 1350. Instead, "monetary consideration" was paid to the Deposit Guaranty National Bank. Pl. Resp. at 5. In addition, the reassignment of debt from Deposit Guaranty National Bank to Plaintiff did not finance FSS's operations.

Likewise, Mr. Hollenshead's purchase of Plaintiff for $381,744.52 (plus attorney fees of $17,500) "for the benefit of FSS in relieving FSS of its then litigation status with the prior members of HAM and in financially guaranteeing numerous performance bonds" does not qualify as financing. Pl. Resp. at 6. Mr. Hollenshead's purchase did not "lend [FSS] money or provide capital." *Fireman's Fund*, 313 F.3d at 1350.

As for Plaintiff's $70,000 advance to FSS to complete the Fort Campbell Job, $65,000 of the $70,000 was attributed to checks from Team Spirit Petroleum, not Plaintiff. Gov't Ex. 5 at 16-19. The final September 5, 2003 cashier's check for $5,000 was issued to Mr. Hayes from BancorpSouth Bank and lists Plaintiff as remitter. *Id.* at 20. This $5,000 transfer is one of three that appears on Plaintiff's bank statements and was the last activity on that account, other than subsequent monthly service fees. Gov't Ex. 26 at 76-79.

The court has determined that Plaintiff's payment of $5,000 to FSS to complete the Fort Campbell Job could be construed as a loan of money or providing capital. Mr. Hollenshead's September 5, 2003 memo indicates that Mr. Hayes was indebted to Mr. Hollenshead for $70,000, but that debt would be repaid by splitting the anticipated $50,000 from the Fort Campbell Job. Gov't Ex. 9 at 25. This memo also explains that Mr. Hollenshead "advanced Ray [Hayes] $5,000 for expense money for his people to go to Fort Campbell and begin the job." *Id.* Therefore, drawing all inferences in Plaintiff's favor, the $5,000 check arguably could allow Plaintiff to meet the definition of a "financing institution." Plaintiff, however, must do more than merely provide financing on a single occasion – financing must be "its business." *Fireman's Fund*, 313 F.3d at 1350.

On October 10, 2003, Gina Clements ("Ms. Clements"), an assistant to Mr. Hollenshead and acting as a third party designee, completed an SS-4 Application for an Employer Identification Number on behalf of Plaintiff. Gov't Ex. 25 at 75. Question 14 asked the applicant to "[c]heck one box that best describes the principal activity of your business." *Id.* Among the eleven pre-defined choices is a box labeled "Finance & Insurance," that Ms. Clements did not select. *Id.* Instead, Ms. Clements checked "Other" and manually specified "consulting" as the principle activity of the business. *Id.* Mr. Hollenshead testified about this event as follows:

GOVERNMENT COUNSEL:          But you would agree, then, that Gina
                             Clements, your employee of sixteen years,

13

|                     |                                                                                                                                        |
|---------------------|----------------------------------------------------------------------------------------------------------------------------------------|
|                     | typed in "Consulting" as Ham Investment's principal activity of your business?                                                          |
| MR. HOLLENSHEAD:    | Of that particular LLC.                                                                                                                 |
| GOVERNMENT COUNSEL: | And she did not check - there is a specific box that she could've checked indicating finance and insurance, and that box was not checked; is that correct? |
| MR. HOLLENSHEAD:    | That's correct.                                                                                                                         |
| GOVERNMENT COUNSEL: | And is this filing a truthful filing?                                                                                                   |
| MR. HOLLENSHEAD:    | It appears to be a truthful filing; however, I think it could've been more specific.                                                    |
| GOVERNMENT COUNSEL: | More specific in what regard?                                                                                                           |
| MR. HOLLENSHEAD:    | Well, it could've included financing. This simply says "Finance." You know, if you finance, if you make loans to folks, where would that go? . . . |
| GOVERNMENT COUNSEL: | So, you wouldn't agree with her checking "consulting" as the main business purpose of Ham Investments?                                  |
| MR. HOLLENSHEAD:    | She didn't check "Consulting." She checked "Other-"                                                                                     |
| GOVERNMENT COUNSEL: | "Other" and typed in consulting, which I think is-                                                                                      |
| MR. HOLLENSHEAD:    | And she knew that I was consulting with Ray Hayes on his business to try to do things to get this company going. She knew I was consulting with Ray Hayes. I think that's just a generic answer, that I was, in fact, consulting with Ray Hayes, and I was also consulting with Rosie Elmore and [the CO]. |
| GOVERNMENT COUNSEL: | I think everybody consults with - I'm consulting with you right now.                                                                    |

14

| MR. HOLLENSHEAD: | That's pretty generic, isn't it, "Consultant?" |
| GOVERNMENT COUNSEL: | That's pretty generic, but, I mean, finance and insurance was available as an option for her to check. |
| MR. HOLLENSHEAD: | Well, she may have overlooked that.  She's certainly not an attorney.  Her forte is not specifically filing government forms, and - |
| GOVERNMENT COUNSEL: | But she does know all aspects of your business- |
| MR. HOLLENSHEAD: | No, she does not. |

Gov't Ex. 32 at 117-18.

To be sure, Plaintiff's bank account has been dormant, but for a few transactions.  Gov't Ex. 26 at 76-79.  Plaintiff did, however, provide FSS with $5,000.  *Id.*  Although Ms. Clements indicated that HAM's principal business activity was "consulting," not financing, Mr. Hollenshead insists that, had the form been "more specific," it would have indicated HAM's business as financing.  Gov't Ex. 25 at 75, 32 at 117-18.  Therefore, whether financing is HAM's "business" or not is a genuine issue of material fact.[8]  *Banco*, 48 Fed. Cl. at 31 (requiring on a motion for summary judgment that, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor") (quoting *Anderson*, 477 U.S. at 255).

> **2.      The September 5, 2003 Assignment, However, Did Not Cover All Amounts Payable Under The September 23, 1999 Contract, As Required By The Anti-Assignment Acts.**

The Anti-Assignment Acts require that an assignment must be for "all amounts payable under such contract and not already paid."  31 U.S.C. § 3727(c)(2)(A); *see also* 41 U.S.C. § 15(b)(2).  In this case, neither party contests that the September 5, 2003 assignment was for the "certain sum of money amounting to $50,000 due to Fire Security Systems, Inc."  Gov't PFF ¶¶ 2-3; Pl. Resp. PFF

---

[8] In addition, the court should clarify that the parties do not agree whether a pledge of funds to BancorpSouth Bank ever occurred.  The Government cites an "affidavit" of Senior Vice President Mr. Rodney Murchison, that states: "BancorpSouth did not participate in any documentation or assignment" of the funds from the Fort Campbell Job.  Gov't Ex. 35 at 143.  Plaintiff objects because Mr. Murchison's affidavit is not a sworn statement.  Pl. Resp. PFF ¶ 8.  An affidavit, however, must be under oath and also contain the signature of the affiant and an officer authorized to administer oaths.  2A C.J.S. *Affidavits* § 25 (2009); *see also* 3 Am. Jur. 2d *Affidavits* § 9 (2009).  The court, however, does not need to resolve whether a pledge of funds occurred, because Plaintiff's status as a financing institution is a genuine issue of material fact.  *Id.*

¶¶ 2-3.  The actual amount paid to FSS, and the amount requested by Mr. Hollenshead, was $61,994. Gov't Ex. 23 at 71; *see also* Gov't Ex. 27-28 at 80-85.

Plaintiff insists that the amount due on September 5, 2003, the date of the assignment, was $50,000, as reflected in a July 28, 2003 letter from the CO to Mr. Hayes stating:

> Reference payment estimate number 4, for payment in the amount of $77,214.00 for 95% completion of work, is changed to payment in the amount of $27,214.00.  Payment estimate was processed 7/25/03 for the amount stated above and $50,000 retained for unacceptable backflow valves.

Gov't Ex. 8 at 24.

In addition, the CO's September 11-12, 2003 telephone logs contain a "notation for . . . 50K" in the margins.  Pl. Ex. 2.  Plaintiff also cites to the CO's July 28, 2003 letter to FSS, explaining that the $50,000 in withheld funds for unacceptable backflow valves, is evidence that the $50,000 was the total amount due under the September 23, 1999 Contract.  Gov't Ex. 8 at 24.

The total amount to be paid upon completion of the Fort Campbell Job was $239,871.00.[9] Gov't Ex. 27 at 81.  Ninety-five percent of that amount is $227,877.45, leaving a $11,993.55 difference representing the last 5% of payment.  In the CO's July 28, 2003 letter, the first scheduled payment was for 95% of the work, *i.e.*, $77,214, reduced by the July 28, 2003 $50,000 hold back to $22,214 for unacceptable backflow valves.  Gov't Ex. 8 at 24.  The $50,000 hold back, however, was to be paid upon satisfactory completion of all work.  *Id.*  Therefore, the remaining balance on the Fort Campbell Job was $50,000, plus $11,993.55 (the remaining 5% of the total contract price), or a total of $61,993.55.  This is the amount (rounded to the nearest whole dollar) that Plaintiff requested from the Army on September 13, 2004 and paid to FSS on September 19, 2003 and March 23, 2004.  Gov't Ex. 23 at 71; *see also* Gov't Ex. 27, 28 at 80-85.

During his deposition, Mr. Hollenshead testified about his understanding of the remaining payment due, as follows:

| | |
|---|---|
| GOVERNMENT COUNSEL: | So, you understood, when you saw [the CO's July 28, 2003] letter, that the Army was retaining fifty thousand dollars?  Did you understand that? |
| MR. HOLLENSHEAD: | Well, it would appear to me that - that they were retaining fifty thousand dollars plus five |

___

[9] Although the total amount to be paid under the September 23, 1999 Contract was $185,000, payment vouchers from September 19, 2003 and March 23, 2004 show that the 100% liquidation rate for the September 23, 1999 Contract was $239,871.  Gov't Ex. 27 at 81, *see also* Gov't Ex. 28 at 84.

16

|                       |                                                                                                                                                                                                 |
|-----------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                       | percent of the seventy-seven two fourteen, because that is ninety-five percent of the - the money.                                                                                                |
| GOVERNMENT COUNSEL:   | So, ninety-five - so there was an extra five percent left to be paid for one hundred percent completion of work; is that right?                                                                   |
| MR. HOLLENSHEAD:      | That's correct.  Now, I think there may have been some change orders associated with this. I'm not sure.  When they got down there, some other things had to be done, and the government increased the price of it.  Seems like to me I have some recall of change orders. So - |
| GOVERNMENT COUNSEL:   | So, you knew, though, at this point in time, that fifty thousand dollars was not the entire amount left that the government had to pay Fire Security Systems, and that there was, at least, five percent of work left remaining and that the government would pay for that five percent remaining of work? |
| MR. HOLLENSHEAD:      | Right.  That's my understanding, that there was - you know, they were keeping fifty thousand dollars plus five percent of the - of a certain amount, and then I think it was plus any amount associated with change orders. |

Gov't Ex. 32 at 110-11.

Mr. Hollenshead's understanding of how much remained to be paid from the Fort Campbell Job, however, is not relevant to whether the September 5, 2003 assignment was for the entire amount due.  Nevertheless, Mr. Hollenshead testified that he thought the remaining balance to be paid was $50,000 plus five percent of $77,214, not five percent of $239,871.  *Id*.  In either event, he acknowledged an additional amount was due on top of the $50,000 assigned.  *Id*.

Therefore, there is no genuine dispute that the amount remaining to be paid under the September 23, 1999 Contract was more than $50,000.  Accordingly, as a matter of law, the September 5, 2003 assignment did not cover "all amounts payable under such contract and not already paid," and is therefore invalid under the Anti-Assignment Acts.  31 U.S.C. § 3727(c)(2)(A); *see also* 41 U.S.C. § 15(b)(2); *Barnhart* v. *Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (holding that courts must "presume that a legislature says in a statute what it means" and that "[w]hen the

17

words of a statute are unambiguous . . . judicial inquiry is complete."); *Skoczen* v. *Shinseki*, 564 F.3d 1319, 1322 (Fed. Cir. 2009) (same).

### 3. The Notification Requirements Of The Anti-Assignment Acts Were Not Met.

The Anti-Assignment Acts require that an assignee provide the disbursing official for a government contract with written notice and a copy of the assignment. 31 U.S.C. § 3727(c)(3); *see also* 41 U.S.C. § 15(b)(3). In the absence of a government waiver, failure to provide such notice negates an assignment. *Banco*, 48 Fed. Cl. at 32-33 (holding that "[b]ecause the requirements of the statute must be strictly construed, the assignee is obligated to comply with its terms," and finding further that "[Plaintiff], having failed to comply with the [Anti-Assignment] Act[s], may now only prevail if the [G]overnment has waived its requirements by otherwise accepting the deficient assignment."); *Am. Fin. Assocs., Ltd.* v. *United States*, 5 Cl. Ct. 761, 768-69 (1984) ("In order to accomplish the foregoing purposes [of preventing multiple payment of claims and costly investigation of alleged assignments], said notice provisions must be strictly construed.").

Plaintiff concedes that it did not provide a copy of the assignment to the disbursing office, but explains that the "expedited payment" required by FSS left Plaintiff with "no effective opportunity . . . to submit appropriate notices." Pl. Resp. at 7. Because the notice requirement must be strictly construed, Plaintiff's justification is not relevant. *Banco*, 48 Fed. Cl. at 32 (holding that any assertion that Plaintiff was unaware of the notice requirement was "irrelevant given the plain text of the [Anti-Assignment] Act[s]" and fatal to plaintiff's claim); *see also Am. Fin. Assocs.*, 5 Cl. Ct. at 768 (rejecting as "misplaced" the argument that strictly applying the notice provisions of the Anti-Assignments Acts would be elevating form over substance). The Anti-Assignment Acts provide a "plain and unambiguous directive of the statute that the assignee forward a true copy of the assignment as well as a notice of assignment directly to the disbursing officer named in the contract." *Am. Fin. Assocs.*, 5 Cl. Ct. at 769. Since Plaintiff failed to provide the required notice, as a mater of law, the September 5, 2003 assignment is not valid.

### 4. The Government Did Not Waive The Requirements Of The Anti-Assignment Acts.

The Government, however, may waive the requirements of the Anti-Assignment Acts. *Tuftco Corp.* v. *United* States, 614 F.2d 740, 745 (Ct. Cl. 1980) ("Despite the bar of the Anti-Assignment statute . . . the Government, if it chooses to do so, may recognize an assignment."); *see also Delmarva Power & Light Co.* v. *United States*, 542 F.3d 889, 894 (Fed. Cir. 2008) ("If, as in this case, the government concludes that it is appropriate and in its best interest to accept the assignment, it may do so . . . the Government's recognition and acceptance of such an assignment makes it a valid assignment.") (internal quotations omitted). Whether the Government waived these

statutory requirements requires a record that establishes that "the Government was aware of, assented to, and recognized the assignments." *Tuftco*, 614 F.2d at 745. To determine if the Government waived the requirements of the Anti-Assignment Acts:

> [T]he court looks to the totality of the circumstances, including specific factors identified by the Court of Claims in *Tuftco Corp.* v. *United States*: whether: (1) the assignor and/or the assignee sent notice of the purported assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment.

*Kawa* v. *United States*, 86 Fed. Cl. 575, 591 (2009) (internal citations omitted). The burden rests on the plaintiff "to show that there was a meeting of the minds" with the Government. *Id.*

In this case, Plaintiff insists "it is apparent from the record presented that the Government had knowledge of the September 5, 2003 assignment, as both Ms. Elmore and the CO acknowledged receipt of the assignment and notice of the assignment." Pl. Resp. at 8. This much is not in dispute. Gov't PFF ¶¶ 6, 14; Pl. Resp. PFF ¶¶ 6, 14. Plaintiff, however, also must show that the Government "assented to[] and recognized the assignments." *Tuftco*, 614 F.2d at 745. The only evidence of the Government's potential "assent" is found in the CO's deposition testimony:

PLAINTIFF'S COUNSEL:   One last series of inquiry. [Y]ou do acknowledge, do you not, that at whatever point your office became aware of Mr. Hollenshead's and HAM Investments' position that your office not only had communication with his office, but, in fact, provided FARS and recommended formularies and documents to guide him in the procedures that your office expects in connection with an assignment of contract proceeds?

CONTRACTING OFFICER: That is correct.

PLAINTIFF'S COUNSEL:   To and including providing guidance and forms to make available to his bank?

CONTRACTING OFFICER: Yes.

Pl. Ex. 1 at 56.

This testimony, however, does not establish the "clear assent necessary to prove a [Government] waiver." *Banco*, 48 Fed. Cl. at 34-35 (internal quotations omitted). Although the CO received notice of the September 5, 2003 assignment, there is no evidence that the CO modified the September 23, 1999 Contract or sent any payments to Plaintiff. *Kawa*, 86 Fed. Cl. at 591. Instead,

the evidence relied on by Plaintiff shows that the CO did *not* accept the September 5, 2003 assignment.

The August 9, 2007 Amended Complaint also alleges that Ms. Elmore "assured" Plaintiff that there would be no problems with the assignment once she received additional information indicating that the assignment had been made to a financing institution.  Am. Compl. ¶ 5.  In addition, the Amended Complaint alleges that Ms. Elmore offered "full cooperation and support" to Mr. Hollenshead and represented that the September 5, 2003 assignment would be valid after she received the additional information.  *Id.*  In *Banco*, plaintiff alleged it had relied on government representations that notice would be forwarded to the "appropriate person" and that the BOP's mailroom received such notice.  48 Fed. Cl. at 34.  Nevertheless, the court rejected these explanations and held "[e]ven accepting this evidence as true, it does not amount to a waiver because BBV fails to point to *any* after-the-fact representations made by the BOP recognizing the assignment, nor did the BOP make any payments in keeping with the BBV's alleged assignment."  *Id.* (emphasis in original).  In this case, as in *Banco,* no representations were made by the Government that show "clear assent" to a waiver.  *Id.* at 35.  Despite representations to the contrary, Plaintiff has proffered no evidence that the Government was willing to accept the alleged September 5, 2003 assignment, despite its flaws.

For these reasons, as a matter of law, the court has determined in this case that the Government did not waive the requirements of the Anti-Assignment Acts.

## V.   CONCLUSION.

For these reasons, the Government's May 1, 2009 Motion For Summary Judgment is granted. The Clerk of the United States Court of Federal Claims is directed to enter judgment accordingly and dismiss Plaintiff's August 9, 2007 Complaint.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

20